IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

CARLOUS HENRY JAY TOINTIGH,      )
                                 )
              Plaintiff,          )
                                 )
                                 )        CIV-12-1140-F
v.                               )
                                 )
CAROLYN W. COLVIN,               )
  Acting Commissioner of Social   )
  Security Administration,[1]      )
                                 )
              Defendant.          )

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying his applications for disability insurance and supplemental

security income benefits under Title II and Title XVI of the Social Security Act, 42 U.S.C.

§§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative

record (hereinafter TR___), and the parties have briefed the issues. The matter has been

referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C.

§ 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's

decision be affirmed.

---

[1]Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration
on February 14, 2013. Pursuant to Rule 25(d)(1), Federal Rules of Civil Procedure, Acting
Commissioner Colvin is substituted for former Commissioner Michael J. Astrue as the Defendant
in this action. No further action need be taken to continue this action. 42 U.S.C. § 405(g).

I. Background

In Plaintiff's applications for benefits filed July 6, 2009, Plaintiff alleged he became disabled on June 1, 2008, due to a lower back injury and high blood pressure. (TR 156). At the time he filed his applications, Plaintiff was 29 years old, he had an eighth grade education, and he had previously worked as an asphalt laborer, construction shuttle car operator, and heavy equipment operator.

In a hearing conducted on February 16, 2011, Plaintiff appeared without counsel before Administrative Law Judge Stults ("ALJ")[2] and testified that he was being treated by Dr. Chesler, a psychiatrist, for anxiety and depression. He had received no other medical treatment since January 2009. Plaintiff testified he experienced pain down his left leg with bending or stooping and constant lower back pain for which he took over-the-counter pain medication. Plaintiff lived with his wife and three small children, and he experienced anxiety symptoms, including sweaty palms, nausea, and hot flashes, when he was around strangers or groups of people. Plaintiff described his usual daily activities, including driving, visiting with a friend and family members, performing some household chores and child care responsibilities, watching television, and taking care of his personal needs without assistance. Plaintiff estimated he could sit for thirty minutes before he must stand to relieve lower back pain, stand for 15 to 20 minutes, and lift 20 pounds. A vocational expert ("VE") also testified at the hearing and responded to hypothetical questioning concerning the availability

---

[2]The ALJ ascertained Plaintiff's understanding and waiver of his right to representation. (TR 31-33).

of jobs.

In the ALJ's decision entered July 7, 2011, the ALJ found that Plaintiff had not worked since June 1, 2008, his alleged disability onset date. Following the well-established sequential evaluation procedure, the ALJ found at step two that Plaintiff had severe impairments due to discogenic and degenerative disorders of the spine and hypertension. In making this finding, the ALJ considered the Plaintiff's medically-determinable mental impairments of depression and anxiety and found that the impairments were not severe because they had resulted in only minimal functional limitations. The ALJ accorded "great weight" to the medical source opinion provided by an agency reviewing psychologists, Dr. Holloway and Dr. Kampschaefer, who determined that Plaintiff's depression, generalized anxiety, and panic attacks were not severe because the impairments had resulted in only mild functional limitations. (TR 13, 338-350, 360).

At step three, the ALJ determined that Plaintiff's impairments were not *per se* disabling under the agency's Listing of Impairments, giving attention to the requirements in the listings for musculoskeletal impairments and cardiovascular impairments in comparison with the objective medical evidence in the record. At the fourth step, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at the light exertional level with the limitations that he could only occasionally climb, balance, stoop, kneel, crouch, or crawl, he required a sit/stand option, and he must avoid exposure to vibration and workplace hazards such as dangerous moving machinery, unprotected heights, open flames, or operation of moving apparatus, equipment, or vehicles. (TR 16).

In connection with the step four RFC finding, the ALJ considered Plaintiff's credibility and ultimately found that Plaintiff's subjective allegations of disabling pain and limitations were not fully credible. (TR 16-20). Based on findings with respect to the exertional requirements of Plaintiff's previous jobs, the ALJ determined that Plaintiff could not perform his past relevant work. Finally, at the fifth step, the ALJ relied on the VE's testimony concerning the availability of jobs for an individual with Plaintiff's vocational characteristics and RFC for work, and the ALJ concluded that Plaintiff was capable of performing jobs available in the economy and was therefore not disabled.

The Appeals Council denied Plaintiff's request for review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not

substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

III. Credibility

Plaintiff challenges the credibility determination made by the ALJ and asserts that the ALJ failed to properly evaluate the evidence in making this determination. Although Plaintiff concedes that the objective medical evidence in the record is not consistent with and does not support Plaintiff's subjective allegations of disabling symptoms, Plaintiff contends that the ALJ failed to properly analyze and consider certain factors, including Plaintiff's consistent use of prescription medications and daily activities, in reaching the credibility determination.

"Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005)(internal quotations, brackets, and citation omitted). As long as the ALJ "sets forth the specific evidence he relies on in evaluating the claimant's credibility," the ALJ is not required to set out a "formalistic factor-by-factor recitation of the evidence." Poppa v. Astrue, 569 F.3d 1167, 1171 (10th Cir. 2009)(internal quotations omitted).

In this case, it is not disputed that the objective evidence does not support Plaintiff's subjective complaints. "A claimant's subjective allegation of pain [or other nonexertional limitations] is not sufficient in itself to establish disability." Thompson v. Sullivan, 987 F.2d

1482, 1488 (10th Cir. 1993).

The ALJ here followed the appropriate three-step analysis established in <u>Luna v. Bowen</u>, 834 F.2d 161 (10th Cir. 1987), for evaluating Plaintiff's complaints of disabling pain and symptoms.  Under <u>Luna</u>,  the ALJ considers and determines (1) whether the claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is at least a "loose nexus" between that impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all of the evidence, both objective and subjective, the claimant's pain was in fact disabling. <u>Id.</u> at 163-164.

The ALJ recognized that Plaintiff had undergone back surgery to repair a one-level lumbar spinal disc protrusion in October 2006 and that the consultative physical examination of Plaintiff in September 2009 showed Plaintiff range of motion was normal except for some limited extension and flexion movements. (TR 21). In assessing the credibility of Plaintiff's subjective allegation of disabling pain and symptoms, the ALJ considered a number of the factors deemed relevant to the credibility finding. <u>See</u> <u>Hargis v. Sullivan</u>, 945 F.2d 1482, 1489 (10th Cir. 1991)(listing factors); <u>Luna</u>, 834 F.2d at 165-166; 20 C.F.R. §§404.1529(c)(3), 416.929(c)(3)(listing seven factors relevant to credibility analysis); Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at * 3 (same).

Plaintiff contends that the ALJ failed to expressly consider his use of prescription medication to alleviate pain.  However, the ALJ stated in the decision that Plaintiff was taking over-the-counter pain medication and prescription medications to treat anxiety and depression.  (TR 20).  These statements are consistent with Plaintiff's testimony at the

hearing and with the medical record. Although the record does show that Plaintiff was prescribed narcotic pain medications for a period of time following his back surgery, the record indicates his treating physician, Dr. Moore, last prescribed narcotic pain medication in February 2008, and Plaintiff points to no evidence in the record of narcotic pain prescriptions after this date. (TR 327, 333-337). The ALJ appropriately reasoned that Plaintiff's nonprescription pain medication was not consistent with his allegation of severe, disabling pain. (TR 20).

Plaintiff points to recognized "side effects" of his medications. Plaintiff's Opening Brief, at 8. However, at the hearing Plaintiff denied experiencing any side effects from his medications. (TR 41). In analyzing Plaintiff's credibility, the ALJ recognized both Plaintiff's medications and his testimony denying the existence of side effects. (TR 19). The ALJ did not err in failing to consider possible side effects from Plaintiff's medications.

Plaintiff testified at the hearing that he had not received medical treatment for his lower back injury and lower back pain since January 2009. The ALJ pointed out in the decision that the medical record showed Plaintiff had undergone physical therapy following his back surgery and reported it was helpful, and that the medical record showed Plaintiff was being treated since August 2010 by a psychiatrist, Dr. Chesler, for anxiety and depression, for which medications, Zoloft® and Neurontin®, had been prescribed in October 2010. (TR 16, 367-368).

The ALJ expressly considered Plaintiff's medical treatment, prescriptions, and other measures other than treatment Plaintiff had employed, including the use of a cane for

7

walking. (TR 19). The ALJ's RFC finding specifically included a sit/stand option consistent with Plaintiff's testimony that his lower back pain interfered with his ability to sit or stand for long periods of time.

The ALJ reasoned that Plaintiff's usual daily activities, as Plaintiff and his wife described them, were "incongruous with his contention that he could not work. The claimant could take care of the children while his wife is working. The claimant testified at the hearing the claimant had three children, whose ages are 7, 4 and 16 months. He has a 16-month-old baby for whom he must feed, change diapers, lift, and carry regularly. The claimant alleged he could cook, albeit simple meals, do the laundry and perform other household chores. Small children such as the claimant's require a great deal of care while his wife is not home." (TR 20). Plaintiff contends that the ALJ mischaracterized Plaintiff's testimony and statements in the record with respect to his usual daily activities. However, the ALJ appropriately inferred from the record, which showed that Plaintiff's wife worked, that he stayed home and cared for his children, including a 4-year-old and a toddler, that Plaintiff's testimony and statements in the record of limited daily activities were not fully credible.

Curiously, the ALJ also stated in the decision that the record showed Plaintiff had received prescriptions for erectile dysfunction and that these "prescriptions for erectile dysfunction do not reflect an inability to perform work activity." (TR 20). The ALJ does not explain how these prescriptions impacted Plaintiff's credibility. However, courts have recognized that such a prescription may indicate a claimant does not have the extreme pain

he or she claimed. See Rose v. Astrue, 2010 WL 1038684, * 5 (W.D.N.Y. 2010)(unpublished op.); Hall v. Astrue, 2009 WL 2900253, * 10 (E.D. Mo. 2009)(unpublished op.). Nevertheless, even assuming the ALJ erred in relying on these particular prescriptions as a factor in determining Plaintiff's credibility, the error is harmless as the ALJ provided an otherwise cogent and lengthy explanation of reasons which are supported by the record to support the ALJ's credibility determination. Further, the ALJ's decision reflects consideration of the objective medical evidence, none of which reflects findings consistent with Plaintiff's allegations of severe, disabling pain and symptoms.

In the ALJ's step five determination which relied on the VE's testimony at the hearing, the ALJ identified several jobs, including the jobs of light assembler, plumbing, light hand painter, and light remnant sorter. There is substantial evidence in the record to support the ALJ's step five decision, and the Commissioner's determination should therefore be affirmed.

RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before         September 19th, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling.

Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ____30th____ day of ____August____, 2013.


GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE